Nov. Term,
1846.

THE STATE *v.* MULLIKIN.

THE STATE
v.
MULLIKIN.

If a person, licensed to retail spirituous liquors, causes and procures, for lucre, evil disposed persons to congregate in and about the house in which the liquors are sold, and permits them to remain there drinking, cursing, black-guarding, fighting, &c., the house is a public nuisance, and the keeper of it is indictable.

*Thursday,*
*December 3.*

ERROR to the *Johnson* Circuit Court.

PERKINS, J.—Indictment for keeping a nuisance. Indictment quashed. It charges that the defendant, being licensed to retail spirituous liquors, caused and procured certain evil disposed persons, for the lucre and gain of the said defendant, to congregate in and about the grocery in which said liquors were sold, and permitted them there to remain drinking, cursing, blackguarding, fighting, misbehaving themselves, &c.

The case of *The State* v. *Bertheol,* 6 Blackf. 474, decides that unlicensed retailing houses, kept as that in this indictment is charged to have been, are public nuisances at common law; and the only question in this case is, whether the fact of the defendant's having a license to retail makes any difference? This may depend something upon the legal extent of such a license. It authorizes the possessor to sell liquor to sober persons. The law forbids him to do so to those intoxicated. The license to retail, then, does not authorize the drunkenness, riot, and disorder, that go to constitute a nuisance. These are not embraced in the franchise of retailing and are not necessarily incident to it. In other words, the license to retail is not, in the eye of the law, a license to keep a nuisance; and cannot protect its possessor in so doing.

But it is said that the legislature, in declaring disorderly kept unlicensed tippling houses to be public nuisances, has impliedly said that licensed ones are not so. Had neither of these kinds of houses been nuisances at common law, the express declaration by the legislature that one of them should, in this state, be punishable as such, would, by implication, have negatived the idea that the other should be so punished, according to the maxim that "the express mention of the one implies the exclusion of the other." But both, as we have concluded, were nuisances at common law, and we

have a general provision in the statute that the keepers of all nuisances shall be punished. This inference of the counsel is also weakened by the fact, that it appears not to have been the main object of the section in regard to unlicensed tippling houses, to declare them nuisances, but to make a distinction between them and other nuisances in regard to punishment, and perhaps in other respects, as will be indicated in the latter part of this opinion. Under such circumstances we think the inference contended for not justified.

It is further urged by the defendant's counsel, that, admitting the existence of the nuisance as charged, still the defendant is not liable to indictment therefor, but only to a suit on his bond. This objection more shortly and generally stated is, that there are certain public nuisances in *Indiana* the keepers of which are not liable to indictment; but sect. 65, p. 974, R. S. 1843, declares that " every person " who shall keep " any public nuisance " shall be fined, &c. This would seem to be conclusive. The counsel supports his objection, however, by an argument which we proceed to examine. It is, that if a licensed grocery can become a nuisance so as to subject its keeper to indictment, then is the man who pays the government for a privilege, in a worse condition than he who exercises it unbought and in violation of law, such an one being subject only to indictment having given no bond on which he can be sued. Suppose all this to be true, we know of no principle of law that will exempt the licensed offender from the double prosecution. Tavern keepers give bond; but if a tavern keeper opens his house to gamblers, he is liable to indictment and to a suit on his bond, while he who has not bought the privilege of tavern keeping is only liable, under the same circumstances, to an indictment for keeping a gaming house. Other like cases might be instanced. If the position taken by counsel be true, it is a defect in the law upon which the legislature must be appealed to. But it is not true that the unlicensed retailer is in a better condition than the licensed. The latter is protected to the full extent of his license, while the former is indictable for every glass of liquor he sells. The latter may be punished, when indicted for suffering his house to become a nuisance, with much less severity than the former; the one being in

any sum, the other not less than 25 dollars. Nor are we now to say that a less degree of disorder, under sect. 68, p. 975, R. S. 1843, may not constitute an unlicensed tippling house a public nuisance, than is requisite to make out the offence at common law.

*Per Curiam.*—The judgment is reversed with costs. Cause remanded, &c.

*A. A. Hammond* and *J. H. Bradley*, for the state.

*W. Quarles*, for the defendant.