LAWTON SPINNING COMPANY *vs.* COMMONWEALTH.

Suffolk. December 2, 1918. — January 6, 1919.

Present: RUGG, C. J., LORING, BRALEY, DE COURCY, & PIERCE, JJ.

*Tax*, Validity. *Corporation*, Foreign, Taxation. *Constitutional Law.*

St. 1909, c. 490, Part III, § 56, providing that an excise of one fiftieth of one per cent of the par value of its authorized capital stock, but in no event exceeding the sum of $2,000 in any one year, shall be levied on all foreign corporations maintaining places of business in this Commonwealth not used exclusively for interstate commerce, was valid before the enactment of St. 1914, c. 724, and again became valid when the last named statute was repealed by St. 1918, c. 76.

The provision of R. L. c. 8, § 4, cl. 1, relating to the effect of the repeal of a statute which was itself a repeal has no application to St. 1918, c. 76.

PETITION, filed in the Supreme Judicial Court on April 10, 1918, under St. 1909, c. 490, Part III, § 70, by a corporation organized under the laws of the State of Rhode Island and engaged in both interstate and intrastate business in Rhode Island and in Massachusetts, to recover excises for the years 1914, 1915, 1916 and 1917, paid by the petitioner respectively on February 10, 1915, February 25, 1916, February 28, 1917 and March 19, 1918, and alleged to have been exacted unlawfully.

The Commonwealth demurred to the petition and assigned the following grounds for demurrer:

"1. So far as said petition relates to taxes paid by the petitioner on February 10, 1915, February 25, 1916, and February 28, 1917, it is not brought 'within six months after the payment of the same,' as required by St. 1909, c. 490, Part III, § 70.

"2. No tax described in the petition was exacted without authority of law.

"3. The tax paid on March 19, 1918, was in no way invalidated or affected by St. 1914, c. 724, that statute having been repealed by St. 1918, c. 76, which became effective on March 18, 1918.

"4. The filing fees paid by the petitioner can in no event be recovered in this proceeding."

The case came on to be heard on the demurrer by *Carroll, J.*, who, by agreement of the parties, reserved it upon the petition

and the demurrer for determination by the full court.    At the argument before this court Mr. Richardson, the counsel for the petitioner, agreed in open court that the record should be construed as meaning that the tax for the year 1917 was assessed and levied on the day when it was paid, namely, on March 19, 1918. This agreement as to the interpretation of the record and the fact was assented to by Mr. Hitchcock, Assistant Attorney General.

*W. M. Richardson,* for the petitioner.

*W. H. Hitchcock,* Assistant Attorney General, for the Commonwealth.

RUGG, C. J.    This petition by a foreign corporation organized under the laws of Rhode Island is brought under St. 1909, c. 490, Part III, § 70, to recover excise taxes alleged to have been illegally exacted and paid in the years 1915, 1916, 1917 and 1918. It was reserved for our consideration on the petition and demurrer. The allegations of fact in the petition must be accepted as true for the purposes of this decision.    The petitioner, a manufacturer of cotton yarn in Woonsocket, in Rhode Island, is engaged in this Commonwealth in both interstate and intrastate business by maintaining agencies and by selling the products of its manufacture.    It conducts within this Commonwealth a purely local or domestic business of the ordinary mercantile character as well as interstate business.    Manifestly, therefore, it is subject to a legal excise tax for doing that intrastate or local business in this Commonwealth.    The only questions presented and argued relate to the constitutionality of the law under which the excise has been exacted.

1. The petitioner is precluded from recovering all such payments of excises except that made in 1918, because it has not complied with the provisions of said § 70 by bringing its petition within six months after the payment of the excises.    That point is concluded against the petitioner by *Lever Brothers Co.* v. *Commonwealth, ante,* 22, just decided.

2. The chief controversy centres on the excise levied and paid in 1918.    It was agreed both by counsel for the petitioner and by the Attorney General in open court that the allegations of the petition as to the excise of 1918 should be construed to mean that the tax was assessed and levied on the day on which it was paid, namely March 19, 1918.    Therefore, the case is to be considered

on that footing. The petition was filed seasonably respecting that payment.

It was provided by St. 1909, c. 490, Part III, § 56, that an excise tax of one fiftieth of one per cent upon the par value of its authorized capital stock, but in no event to exceed $2,000 for any one year, should be levied upon all foreign corporations maintaining places of business within the Commonwealth not used exclusively for interstate commerce. The statute has been upheld as valid by this court. *Attorney General* v. *Electric Storage Battery Co.* 188 Mass. 239. *Baltic Mining Co.* v. *Commonwealth,* 207 Mass. 381. *S. S. White Dental Manuf. Co.* v. *Commonwealth,* 212 Mass. 35. That statute was held to be not in conflict with any provision of the Constitution of the United States as applied to such corporations as the petitioner before the enactment of St. 1914, c. 724. *Baltic Mining Co.* v. *Massachusetts,* 231 U. S. 68. *Cheney Brothers Co.* v. *Massachusetts,* 246 U. S. 147. In substance and effect the limitation of that statute as matter of computation subjected such foreign corporations, having an authorized capital stock of $10,000,000 and more than that sum, to a maximum excise of $2,000. Then St. 1914, c. 724 was enacted. It was not in terms an amendment of said § 56. It was an entirely separate and independent statute in form, substance and time of enactment. It referred to said § 56 only for a description of the class of corporations included within its scope and of the machinery for the assessment and collection of the excise, and to say that the excise it imposed was in addition to that there imposed. It provided in § 1 that all such foreign corporations having an authorized capital stock in excess of $10,000,000 should be subject to an excise tax of one one-hundredth of one per cent on its excess of capital stock above $10,000,000, in addition to the tax to be levied under said § 56. We thought that the conjoint operation of these two statutes upon such a foreign corporation having an authorized capital stock in excess of $10,000,000, and thus within the direct sweep of both statutes, was not obnoxious to any provision of the Constitution of the United States. *International Paper Co.* v. *Commonwealth,* 228 Mass. 101. But we were in error and our judgment was reversed in *International Paper Co.* v. *Massachusetts,* 246 U. S. 135. We also thought that § 56 in its operation upon such foreign corporations with an au-

thorized capital stock of less than $10,000,000 was wholly unaffected by said c. 724 and was valid regardless of the terms of the latter act. We expressed that view in *Locomobile Co. of America* v. *Commonwealth*, 228 Mass. 117. But we were in error on that point also, as was held in *Locomobile Co. of America* v. *Massachusetts*, 246 U. S. 146. In substance and effect that decision, as we understand it, was that an excise, assessed while both statutes were in force, upon a corporation within the direct effect of said § 56 alone, because having a capital stock of less than $10,000,000, was invalid under the United States Constitution.

Since the announcement of these decisions by the United States Supreme Court, the Legislature of this Commonwealth has repealed St. 1914, c. 724, by the enactment of St. 1918, c. 76, which is directed solely to that end without any reference to said § 56, and which took effect on March 18, 1918, the day before the excise here in question was levied and paid. The capital stock of the petitioner was $2,400,000. So that, in any event, the amount of its excise would not have been directly affected by said c. 724, because that act related specifically only to corporations whose capital stock was in excess of $10,000,000.

The excise here in issue was computed solely pursuant to the terms of § 56 of the general tax act, St. 1909, c. 490, Part III, which was the only statute authorizing the levy of an excise on foreign corporations not repealed by express enactment on the date when the tax here in question was assessed. It was the only act which can possibly be contended to have been in force when that excise was levied and collected.

The precise question, therefore, is whether said § 56 is still in force and is valid as not being in conflict with any provision of either State or Federal Constitution, or whether it has been wholly annulled because of its temporary association respecting the subject of excises with said c. 724.

We are of opinion that said § 56 was at the time of the assessment and payment of the excise here in question a valid statute not in violation of the Constitution of this Commonwealth or of the United States. We rest that opinion upon two separate and independent grounds, each quite distinct and apart from the other.

A. So far as the meaning and effect of these two statutes are

matters for this court to determine, we hold now as we have hitherto held that said § 56 is valid and does not violate any right secured to the petitioner under either the Constitution of this Commonwealth or of the United States. That section, up to the time of the payment of the tax here sought to be recovered, never had been expressly amended. The only invalidity wrought in our system of excise taxation of foreign corporations was caused by the enactment of St. 1914, c. 724. That was a distinct piece of legislation. It is a principle firmly imbedded in the jurisprudence of this Commonwealth that in the consideration of a statute where one part is unconstitutional, which is in its nature separable from other parts so that they well may stand independently of it, and there is no such connection between the valid' and the invalid parts that the General Court would not be expected to enact the valid part without the other, the parts of the statute not in conflict with the Constitution will be held good. That was early decided by this court and was amplified by Chief Justice Shaw in *Warren* v. *Mayor & Aldermen of Charlestown*, 2 Gray, 84, 98, 99. That case often has been cited with approval by the Supreme Court of the United States. That principle has been steadily adhered to by this court. *Jones* v. *Robbins*, 8 Gray, 329, 338. *Ashley* v. *Three Justices of the Superior Court*, 228 Mass. 63, 81, and cases there collected. *Commonwealth* v. *Slocum*, 230 Mass. 180, 191. To the same point is *International Textbook Co.* v. *Pigg*, 217 U. S. 91, 113. That principle is applicable to the two statutes here in question. St. 1914, c. 724, is a distinct act, entirely separable in its form, in its terms, in its practical operation and in the date of passage from said § 56. The latter was in fact enacted first as a distinct statute. Upon it was engrafted said c. 724 at a later time by a different Legislature. It can be declared unconstitutional without in any way affecting the validity of said § 56. It· is not necessary to resort to speculation to determine whether the Legislature would have enacted one statute without the other because it did in fact enact § 56 as a separate provision and suffered it to remain at least six years without change before it undertook to enact the supplemental provision of said c. 724. The presumption under these circumstances is far stronger than in the case of the ordinary statute that it was not the intent of the Legislature to

work the ruin of a perfectly valid system of excise taxation by the enactment of a subsequent act, which is not so interwoven with 'the pre-existing act as to be inherently and necessarily an indissoluble unit. Whatever illegal element was introduced into our tax system by St. 1914, c. 724, it cannot be thought that the Legislature intended the whole system to fall rather than that the illegal element should be detected and cut out by being declared unconstitutional. It is manifest to us that the Legislature did not intend to inject illegality into said § 56 by the enactment of St. 1914, c. 724, but that its purpose was that the latter statute should stand or fall on its own merits. Since said c. 724 did introduce an unconstitutional element into the tax law, as has been decided by *International Paper Co.* v. *Massachusetts*, 246 U. S. 135, that chapter can, and in our opinion it ought, alone, to be declared unconstitutional, and that it ought to be held further that said c. 724 did not infect with invalidity said § 56, and that said § 56 stands unaltered, unimpaired and uninfluenced by the unconstitutional, independent and separable St. 1914, c. 724. The result is, that although St. 1914, c. 724, is unconstitutional, it is entirely independent, separable, severable and distinct from said § 56, and that said § 56 stands and remains a constitutional provision, free from any taint arising from the unconstitutional effort of the Legislature to enact the provisions of said c. 724. That is what we intended to decide in *Locomobile Co. of America* v. *Commonwealth*, 228 Mass. 117, 122. That is what we now expressly declare, so far as the matter is within our jurisdiction to decide. We did not intend to discuss this question at all in deciding *International Paper Co.* v. *Commonwealth*, 228 Mass. 101, because we did not then regard this point involved in the conclusion there reached. All that was said in that opinion was from another point of view and with a different object. We are unable now to perceive anything in that opinion inconsistent with or bearing upon the decision here made. The two seem to us wholly in harmony. But if there is in that opinion any part or expression which may be thought at all at variance with the conclusion here reached upon this point, that part or expression is now overruled.

It was the meaning and intent of the Legislature that said § 56 and said c. 724 were independent and severable, each to

stand or fall by itself. That is plain from the further fact that, after the decisions of the United States Supreme Court in the International Paper Company and Locomobile Company of America cases, 246 U. S. 135, and 146, the Legislature simply repealed St. 1914, c. 724, without at the same moment re-enacting said § 56. It is unthinkable that the Legislature did not suppose that after such repeal said § 56 was still in force, or intended that thereafter there should be no excise tax whatsoever on foreign corporations. Yet the result of upholding the contentions of the petitioner would be that after the repeal of said c. 724 there was no excise tax law whatsoever on foreign corporations.

B. The question at issue may be approached from a second and wholly independent point of view. Said § 56 and said c. 724, after the enactment of the latter, constituted together a single scheme for the taxation of foreign corporations conducting a local business. *Looney* v. *Crane Co.* 245 U. S. 178. That single scheme was made up of two separate statutes enacted at different times. One standing by itself alone was unobjectionable. The other, although not in form an amendment to the earlier act, introduced an unconstitutional element into the scheme of taxation. Its only effect upon the earlier statute was to impose an additional tax upon corporations whose authorized capital stock was in excess of $10,000,000. As to such corporations it removed the maximum limit of taxation. But it did not affect even in a remote degree either the method or amount of assessment of excise upon corporations not within its sweep. The excise upon all such corporations was left to be ascertained and determined wholly by said § 56. That scheme in its entirety is declared invalid. *International Paper Co.* v. *Massachusetts*, 246 U. S. 135. *Locomobile Co. of America* v. *Massachusetts*, 246 U. S. 146. Thereupon, the Legislature is confronted with two acts, both standing on its statute books unrepealed, the conjoint effect of which is unconstitutional as to certain corporations. The subject of that legislation is manifestly within the power of the General Court. In appropriate instances it is within the power of a court of last resort itself to cut out from a statute its unconstitutional parts by refusing to enforce them, and to uphold its valid parts. *Ashley* v. *Three Justices of the Superior Court*, 228 Mass. 63, 81. *International Textbook Co.* v. *Pigg*, 217 U. S. 91, 113. On principle

there appears to be no sound reason why the Legislature may not accomplish the same result by amendment or repeal. The obnoxious feature of the system of excise taxation as embodied in the two statutes, considered in their conjoint effect, may be removed by the Legislature by amendment eliminating, or by repeal of, the offending part. If the law, as thus left, after amendment or partial repeal, is such as would have been valid as an initial enactment, it is valid as to all matters coming within its future operation. That which previously was unenforceable and invalid becomes transformed into a binding and enforceable statute. The Legislature under these circumstances may repeal the statute which alone imported any element of illegality into the scheme of taxation, and thereby render the scheme valid because resting upon an unobjectionable statute left unrepealed and unchanged. That is what the General Court did by the enactment of St. 1918, c. 76. The inference is irresistible that the express purpose of the General Court in repealing St. 1914, c. 724, by the terms of St. 1918, c. 76, was to validate the rest of the foreign corporation excise tax law and to restore thereby said § 56 to its former position as a vital and effective piece of legislation. After the repeal of said c. 724, said § 56 stood as before the enactment of said c. 724, unaffected and impregnable in respect of its validity and conformity to the Constitution. It was unnecessary for the Legislature to re-enact said § 56 in order that it might become a valid statute. It stood. Its legality and constitutionality and present force revived by the simple repeal of St. 1914, c. 724. As has been pointed out, this was the manifest design of the Legislature. We know of no reason why that design cannot be given effect.

There are numerous decisions to this effect in other jurisdictions. *Sweet* v. *Syracuse,* 129 N. Y. 316, 349, 350. *Allison* v. *Corker,* 38 Vroom, 596. *Ferry* v. *Campbell,* 110 Iowa, 290, 299. *State* v. *Cincinnati,* 52 Ohio St. 419, 446. *People* v. *De Blaay,* 137 Mich. 402, 405. *Mariposa County* v. *Madera County,* 142 Cal. 50, 57. *Lynch* v. *Murphy,* 119 Mo. 163. *Jacksonville, Tampa & Key West Railway* v. *Adams,* 33 Fla. 608, 612. *Walsh* v. *State,* 142 Ind. 357. (See *Copeland* v. *Sheridan,* 152 Ind. 107.) *Commonwealth* v. *Chesapeake & Ohio Railway,* 118 Va. 261, 275, 276. *Sawter* v. *Shoenthal,* 54 Vroom, 499, 503. *Patterson* v. *Close,* 55

Vroom, 319, 322. *St. Louis & San Francisco Railroad* v. *Tolbert,* 47 Okla. 228, 234. *Beatrice* v. *Masslich,* 47 C. C. A. 657, 661. *Columbia Wire Co.* v. *Boyce,* 44 C. C. A. 588. *American Fidelity Co. of Montpelier* v. *State,* 128 Md. 50, 54, 55. *Hammond* v. *Clark,* 136 Ga. 313. See note in 4 Ann. Cas. 920, and cases there collected. This principle seems to us to be upheld by *In re Rahrer,* 140 U. S. 545, 565. See also in this connection *Spencer* v. *Merchant,* 125 U. S. 345; *Donley* v. *Pittsburgh,* 147 Penn. St. 348; *Fontenot* v. *Young,* 128 La. 20. If and so far as there is anything in *Schwartz* v. *Oshkosh,* 55 Wis. 490, 495, at variance with our conclusion upon this point, it is contrary to the current of authority and we do not follow it.

It follows that, if the question is approached from this second point of view, said § 56 was in full force and effect when the excise here attacked was assessed and collected.

3. This conclusion appears to us to be supported by the further consideration that it is not correct to say that St. 1914, c. 724, was void or that the two statutes considered together as making one scheme were void. If all the property of a foreign corporation were located wholly within the Commonwealth and not engaged in interstate commerce, the ground for the decisions in 246 U. S. 135 and 146 is inapplicable and the excise with respect to such a corporation would be valid. Statutes may be constitutional in their operation with respect to some persons or states of fact, and unconstitutional as to others. *Sears* v. *Board of Aldermen of Boston,* 173 Mass. 71, 79, 80. A statute, valid and enforceable within a certain limited field, but unconstitutional and unenforceable in a wider field, may by amendment or law removing unconstitutional features be extended into the wider field. See *In re Rahrer,* 140 U. S. 545, 565.

4. There is force in the view that a statute, enacted by the Legislature with all prescribed formalities but declared to be contrary to the Constitution by a court of last resort, is nevertheless a legislative act until repealed by the same power by which it was enacted, that such a statute, although often referred to as void, is speaking with strict accuracy, until repealed by the Legislature, simply unenforceable, that the question of its validity so long as it is not repealed by the Legislature may be raised at a subsequent time between other parties and the court may re-

verse its earlier opinion unless it remains satisfied with the opinion first expressed or feels bound by the doctrine of *stare decisis*. The decisions of the Supreme Court of the United States in the *Legal Tender Cases*, 12 Wall. 457, 553, 572, upholding in their entirety the legal tender acts of Congress and overruling *Hepburn* v. *Griswold*, 8 Wall. 601, 606, wherein the same court had previously declared those acts unconstitutional with respect to certain classes of debts, give color to the contention that a statute once declared unconstitutional by a court of last resort may nevertheless at a later period be held enforceable because not in conflict with the fundamental law. *Allison* v. *Corker*, 38 Vroom, 596, 600. If that be so, it would seem to follow inevitably that the Legislature may cut out the offending parts of one of its own statutes without re-enacting the unoffending parts. It appears to us unnecessary to discuss or decide upon the soundness of this view and it is left entirely open.

5. The provisions of R. L. c. 8, § 4, cl. 1, to the effect that "The repeal of an act or resolve shall not revive any previous act or resolve," has no reference to such a case as is here presented. That clause merely changed the rule of the common law that, if a statute which repeals another is itself repealed, the first statute was revived without formal words for that purpose. *Hastings* v. *Aiken*, 1 Gray, 163, 165. Said c. 724 was not itself a repealing act.

6. Since said § 56 is still in force, we do not understand it to be contended that the excise was not valid. The petitioner was plainly within its terms. The case, so far as affected by the Constitution of the United States, is within the controlling authority of *Baltic Mining Co.* v. *Massachusetts*, 231 U. S. 68 and *Cheney Brothers Co.* v. *Massachusetts*, 246 U. S. 147. *General Railway Signal Co.* v. *Virginia*, 246 U. S. 500.

7. Since the excise tax was valid, it cannot be contended that the registration fee was not lawfully exacted. But even if the excise were illegally exacted, the registration fee could not be recovered. *Lever Brothers Co.* v. *Commonwealth*, ante, 22.

*Petition dismissed with costs.*